| Case No. | 2:16-cr-0833-CAS | | Date | May 8, 2017 |
|---|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|
| Interpreter | N/A |

| CATHERINE JEANG | LAURA ELIAS | JAKE NARE<br>LAWRENCE MIDDLETON<br>REEMA EL-AMAMY |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) Cesar Alejandro Castillo Flores | X | | | 1) Pedro Castillo | X | X | |
| 2) Manuel Alex Moreno | X | | | 2) Yolanda Barrera | X | X | |

**Proceedings:** GOVERNMENT'S MOTION TO QUASH SUBPOENA OF AUSA KIM (Filed April 26, 2017, Dkt. 79)

GOVERNMENT'S MOTION TO QUASH SUBPOENA OF AUSA PINKEL (Filed May 8, 2017, Dkt. 107)

## I.    INTRODUCTION AND PROCEDURAL HISTORY

On November 29, 2016, the Government filed a criminal complaint against Cesar Flores and Manuel Moreno (collectively "defendants"). Dkt. 1. On December 16, 2016, a grand jury returned a three-count indictment against defendants. Dkt. 12 ("the Indictment"). The Indictment alleges that on or about October 11, 2016, Flores and Moreno: (1) conspired to possess methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 846; (2) possessed or aided and abetted possession, with intent to distribute, methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a); and (3) possessed, or aided and abetted possession of, a firearm in the furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); 18 U.S.C. § 2(a).

Each defendant has filed a motion to suppress evidence derived from a purportedly unlawful search.  See Dkts. 35, 38.  In anticipation of a hearing on the motions to suppress, the parties have filed a number of interrelated motions.  Two such motions are the Government's motions quash two subpoenas for testimony by two Assistant United States Attorneys ("AUSAs").  Dkts. 62, 107.  On April 26, 2017, the Government filed a motion to quash the subpoena relating to AUSA Ann Kim ("the Kim Subpoena").  Dkt. 62.  On May 1, 2017, Moreno lodged an opposition to the motion to quash the Kim Subpona.  Dkt. 90.  On May 3, 2017, Flores filed an opposition to the motion to quash the Kim Subpoena.  Dkt. 100.  On May 4, 2017, the Government filed a reply in support of its motion to quash the Kim Subpoena.  Dkt. 101.

On May 8, 2017, the Government filed a motion to quash the subpoena of AUSA Pinkel, which relied primarily upon the same arguments relating to the Kim Subpoena.  Dkt. 107.  Also, on May 8, 2017, the Court heard oral argument from the parties regarding the pending motions to quash.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    The Stop of Defendants' Vehicle

On October 11, 2016, Los Angeles Sheriff's Department ("LASD") Deputy Peterson stopped a Toyota 4 Runner on Interstate-5.  Flores was driving the vehicle.  Moreno was a passenger.  Peterson approached the vehicle, spoke with the occupants, and ultimately asked both defendants to exit the vehicle.  Peterson claims to have smelled marijuana in the vehicle.  Defendants refused to consent to a search of the vehicle.  Peterson placed both defendants in his patrol car while waiting for a narcotics-detecting canine-unit to arrive.  Thereafter, a dog handled by LASD Detective Jeffrey Hoslet allegedly alerted to the presence of narcotics in the vehicle.  LASD deputies searched the vehicle and found just over 4 kg of methamphetamine in a backpack and a .40 caliber handgun in the center console.

### B.    The Subpoenas

The two subpoenas at issue here seek testimony by AUSAs about Peterson's character for truthfulness.  In a prior case, United States v. Rafael Gonzalez Arellano, Case No. 14-cr-00410-BRO (the "Arellano Case"), the Government filed charges based upon a traffic stop by Peterson.  Kim was the primary AUSA assigned to handle the

prosecution of the Arellano Case. Peterson's incident report from that traffic stop indicated that Peterson obtained verbal consent from Arellano to search his truck. Arellano filed a motion to suppress evidence derived from a purportedly unlawful search. During preparation for the hearing on Arellano's motion to suppress, Kim ensured that Peterson signed a sworn declaration about the stop, Kim interviewed Peterson, and she spoke with a second deputy who responded to the scene of the traffic stop. The second deputy, who was called to the scene in order to act as a translator, opined that Arellano did not speak or understand English. The Government voluntarily dismissed the charges against Arellano before the hearing on Arellano's motion to suppress.

Thereafter, Pinkel became aware of Peterson's incident report, declaration, and interviews with Kim as well as Peterson's role in other cases being pursued by the United States Attorneys' Office. The Government elected to dismiss charges in a second case in which Peterson was the primary witness to a traffic stop, United States v. Becerra-Alvarez, Case No. 15-cr-0877-MJ (the "Becerra-Alvarez Case"). In a third case, United States v. Israel Ayala & Yessic Avila, Case No. 15-cr-00085-SVW (the "Ayala Case"), the defendants in that case filed a motion to suppress evidence derived from a traffic stop conducted by Peterson. The Government made a Henthorn disclosure relating to prior LASD disciplinary actions against Peterson in LASD and regarding Peterson's statements in the Arellano Case. The defendants in the Ayala Case pleaded guilty prior to any evidentiary hearing in their case.

The Government asserts that it has produced the following discovery relating to Peterson:

(1) a March 20, 2017 letter describing the sequence of events leading up to the dismissal of the Arellano Case, including Peterson's initial report from the traffic stop in Arellano and Peterson's declaration in relation to the Arellano Case;
(2) a March 23, 2017 letter describing two prior disciplinary incidents in 1998 and 2002 from Peterson's personnel file as well as the LASD Internal Affairs Bureau ("IAB") decision to refer Peterson to the Los Angeles County District Attorney's Office, which decided there was insufficient evidence to bring charges against Peterson;
(3) an October 5, 2015 letter to defense counsel in the Ayala Case, including a memorandum by Kim describing her meetings with witnesses in the Arellano Case;
(4) three letters by Kim to Arellano's defense counsel about Peterson dated November 12 and 13, 2014;

(5) notes written by AUSA Jake Nare based upon his own review of the LASD IAB investigation into Peterson's conduct in the Arellano Case;
(6) handwritten notes from the IAB interview of Kim relating to Peterson's conduct in the Arellano Case;
(7) the LASD Internal Criminal Investigations Bureau ("ICIB") report on Peterson's conduct in the Arellano Case;
(8) the LASD IAB report on Peterson's conduct in the Arellano Case.

On November 28, 2016, a subpoena issued for Kim to testify regarding Peterson's credibility. The subpoena further commanded Kim to bring with her:

> Any and all documents, including but not limited to, notes, memorandums, emails, reports of interviews, letters, or other materials to or from AUSA Ann Kim regarding the dismissal of [the Arellano Case] and all materials relating to the credibility, or lack thereof, of [LASD] Deputy James Peterson.

Dkt. 79-2 Ex. K.

On April 24, 2017, a similar subpoena issued for Pinkel to testify regarding Peterson's credibility and the dismissal of the Becerra-Alvarez Case.

During oral argument on May 8, 2017, defendants clarified that they are only seeking testimony by Kim and Pinkel in relation to defendants' motions to suppress.

## III. DISCUSSION

Rule 17(c) of the Federal Rules of Criminal Procedure "governs the issuance of subpoenas duces tecum in federal criminal proceedings." United States v. Nixon, 418 U.S. 683, 697–98 (1974). In Nixon, the Supreme Court held that the proponent of the subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." Id. at 699. Because Rule 17(c) was not intended to "provide a means of discovery for criminal cases," the subpoena must not constitute a general "fishing expedition." Id. at 698–700. Rule 17(c)(2) further allows a court to consider a motion to quash if the subpoena is unreasonable or oppressive.

Here, the Government moves to quash both subpoenas for two reasons. First, the Government contends that neither Kim nor Pinkel's opinions about Peterson's credibility are relevant and admissible in relation to defendants' motions to suppress. Second, the

Government contends that any records describing Pinkel or Kim's opinions about Peterson should be treated as privileged and not subject to subpoena by defendants.

"[I]n general, a prosecutor's opinions and mental impressions of the case are not discoverable under Brady [or Giglio] unless they contain underlying exculpatory facts" because those opinions and impressions are protected by the work product privilege. Morris v. Ylst, 447 F.3d 735, 742 (9th Cir. 2006). Thus, the Government is not required to disclose a prosecutor's "opinion or a recording of his thoughts" about whether a witness is truthful. Id. Any such "opinion or recording of [the prosecutor's] thoughts" is work product, subject to the rules governing privilege.[1] Id.

In opposition to the motion to quash the subpoena, Flores argues that any work product privilege has been waived in light of the Government's disclosure of information to LASD investigators and by the Government's prior discovery disclosures in this case. Flores notes that the Government has already provided documents to the defense stating, inter alia, that:

- Kim "believed Peterson had committed perjury and lied." Bates Page No. 167.
- "The [U.S. Attorney's Office] expressed their concerns regarding Peterson's credibility in a written correspondence to the Sheriff's Department's Internal Criminal Investigation Bureau." Bates Page No. 140.
- "Kim and her supervisors agreed that Peterson's credibility was a concern." Bates Page No. 151.
- The Arellano Case was "dismiss[ed] b/c of no consent." Bates Page No. 208.

The work product doctrine is a "qualified privilege," whose role in "assuring the proper function of the criminal justice system is . . . vital." United States v. Nobles, 422 U.S. 225, 238 (1975). However, the work product privilege is not absolute. Id. at 239. It

---

[1] Courts distinguish between privileged opinion work product and facts disclosed in documents. See Hickman v. Taylor, 329 U.S. 495, 511, 67 S. Ct. 385, 394, 91 L. Ed. 451 (1947) ("Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had"). The Court has conducted an in camera review of the Government's records provided in regard to the subpoenas at issue here and, in a separate order, has compelled the production of certain discoverable facts that are not, themselves, work product. Accordingly, for purposes of this order, the Court addresses only defendants' entitlement to either AUSA's testimony and documents or portions of documents disclosing opinion work product regarding Peterson's credibility.

may be waived. Id. Where a party produces notes that are protected work product, said disclosure may constitute a waiver of the work product privilege with respect to the disclosed subject matter. Hernandez v. Tanninen, 604 F.3d 1095, 1100 (9th Cir. 2010).

Pursuant to Federal Rule of Evidence 502, waiver of the work product privilege is limited to where the waiver is "intentional" and undisclosed communications "ought in fairness to be considered" alongside disclosed communications. Fed. R. Evid. 502(a). A "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Id. Advisory Committee Notes. "[A] subject-matter waiver of the attorney work product privilege should only be found when it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed." In re United Mine Workers of Am. Employee Ben. Plans Litig., 159 F.R.D. 307, 312 (D.D.C. 1994). Waiver is reserved for "those unusual situations" where one party has made a "selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502(a) Advisory Committee Notes (citing United Mine Workers, 159 F.R.D. at 312).

Here, as in United Mine Workers, the Government has disclosed attorney work product that is "unhelpful" to its position. United Mine Workers, 159 F.R.D. at 312. The Court has examined the Government's the documents at issue in camera and finds nothing to suggest that the Government has made an incomplete disclosure in order to gain an unfair advantage. Rule 502 provides that waiver of the work product privilege should be limited to those cases where a party has cherry-picked favorable materials to disclose while holding back unfavorable materials. That did not occur here. Flores' own showing in opposition to the motion to quash demonstrates that the Government has disclosed privileged work product that is *unfavorable* to its position. Nothing in the undisclosed memoranda suggests that the Government's production of documents has been one-sided, such that it could be said to have waived privilege.[2]

---

[2] Moreno argues that documents discussing attorneys' opinions about Peterson are not work product because they were not prepared for trial, but rather used to justify the filing of a motion to dismiss the indictment in Arellano. This argument is unpersuasive. In Ylst, wherein the Ninth Circuit established that opinions by a prosecutor about the credibility of a witness are protected work product, the document at issue had been prepared *after* the witness testified at trial, not in anticipation of trial. 447 F.3d at 742. Accordingly, the fact that some documents may have been prepared at different times before the dismissal of the Arellano case or after, is of no moment. The Government was evaluating the credibility of Peterson as it related to all of the Government's cases in

Defendants' further argue that even if the Government has not waived the privilege, the Court should deny the motion to quash the subpoena because of a compelling need for disclosure of Kim's opinions about Peterson. The Ninth Circuit has articulated such an exception to the normal rules governing discovery and privilege where "mental impressions are *at issue* in a case and the need for the material is compelling." Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992). However, that exception does not apply here.

This case is unlike Holmgren. In Holmgren, upon which defendants' rely, the court dealt with a bad faith insurance claim settlement case, wherein "the strategy, mental impressions and opinion of the insurer's agents concerning the handling of the claim [were] *directly* at issue." Id. (quotation marks and brackets omitted) (emphasis added). The court ruled that the insurer should be required to disclose record evidence of its own insurance adjuster's opinion regarding the range of potential liability in the underlying insurance claim. Id.

Although a character witness's opinion about Peterson's character for truthfulness may be *relevant* to defendants' motions to suppress, neither Peterson's character for truthfulness nor the AUSAs' opinions regarding Peterson's character are directly at issue. What is directly at issue is whether defendants unlawfully possessed narcotics and whether defendants' vehicle was lawfully searched by LASD deputies. Furthermore, the "compelling" need for an exception to privilege in Holmgren does not apply here. In a bad faith insurance claim settlement case like Holmgren, an insurer "may call adjusters to testify to their opinions as to the lack of viability of the underlying claim." Id. at 578. Thus, the Holmgren court found that adjusters' opinions should not be privileged as a "practical acknowledgement" that an insurance company might otherwise portray its own adjusters' opinions in a misleading light – offering some adjuster opinions while concealing others. Id. The court further observed that "[w]hen an insurer chooses to remain mute on the subject, the plaintiff is not foreclosed from developing the same evidence." Id. at 578. In contrast, here, the Government is prohibited from offering character witness opinions bolstering Peterson's credibility unless defendants first attack Peterson's character. Fed. R. Evid. 608(a). Kim and Pinkel are not the only possible sources of relevant character witness opinions and there is no suggestion here that the Government intends to offer testimony from AUSAs who may have formed positive opinions about Peterson's character while concealing negative opinions. Consequently, the privilege exception described in Holmgren is inapplicable. Peterson's credibility is relevant to the motions to suppress, but there is no compelling need for Kim or Pinkel's

---

which Peterson was anticipated to be a witness. Those discussions and documents are privileged.

opinions regarding Peterson's trustworthiness which justifies overcoming the protection of the attorney work product doctrine.

Any opinions formed by Pinkel or Kim regarding Peterson's character for truthfulness were the result of each AUSA's performance of their prosecutorial duties on behalf of the Government.[3] "[F]airness does not encompass an obligation on the prosecutor's part to reveal his or her strategies, legal theories, or impressions of the evidence." Ylst, 447 F.3d at 742. As observed in Ylst, to permit discovery of "opinion work product would greatly impair the government's ability to prepare for trials." Id. Where the Government cannot be said to have waived work product protection of its dismissal memoranda in the Arellano Case and Becerra-Alvarez Case or any related documents discussing the dismissals or Peterson's credibility, those records and any opinions expressed therein remain protected work product. Accordingly, Kim and Pinkel's opinions are not properly the subject of discovery and are similarly not properly the subject of subpoena. See Nixon, 418 U.S. at 698–700 (subpoenas are not a means for discovery).

The Government's motions to quash the subpoena of AUSA Kim and the subpoena of AUSA Pinkel are **GRANTED**.

## V. CONCLUSION

The Government's motions to quash are **GRANTED**.

IT IS SO ORDERED.

|                          | 01  | : | 15  |
|--------------------------|-----|---|-----|
| Initials of Deputy Clerk |     | CMJ |   |

---

[3] Pinkel, who was the Chief of the General Crimes section of the United States Attorney's Office in 2015, never met or personally interacted with Peterson. Kim interviewed Peterson twice in-person and interacted with him over the phone. Accordingly, it is unclear whether Kim or Pinkel ever actually formed an opinion regarding Peterson's *character* for truthfulness, let alone an opinion that would have sufficient foundation to be admissible. See Fed. R. Evid. 701 (lay witness opinions must be "rationally based on the witness's perception" and "helpful to . . . determining a fact in issue"). However, the Court need not evaluate whether Pinkel or Kim *might* have formed opinions about Peterson's character and whether defendants *might* be able to lay adequate foundation for admission of the opinions because a prosecutor's opinions about a witness are opinion work product.