| Case No. | 2:16-cr-0833-CAS | | Date | May 8, 2017 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| CATHERINE JEANG | | |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond. | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) Cesar Alejandro Castillo Flores | NOT | X | | 1) Pedro Castillo | NOT | X | |
| 2) Manuel Alex Moreno | NOT | X | | 2) Yolanda Barrera | NOT | X | |

**Proceedings:**    (IN CHAMBERS) - MORENO'S MOTION TO COMPEL DISCOVERY (Filed March 5, 2017, Dkt. 33)

FLORES' MOTION TO COMPEL DISCOVERY (Filed March 6, 2017, Dkt. 34)

## I.    INTRODUCTION

On November 29, 2016, the Government filed a criminal complaint against Cesar Flores and Manuel Moreno (collectively "defendants"). Dkt. 1. On December 16, 2016, a grand jury returned a three-count indictment against defendants. Dkt. 12 ("the Indictment"). The Indictment alleges that on or about October 11, 2016, Flores and Moreno: (1) conspired to possess methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 846; (2) possessed or aided and abetted possession, with intent to distribute, methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a); and (3) possessed, or aided and abetted possession of, a firearm in the furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); 18 U.S.C. § 2(a).

On March 5, 2017, Moreno filed a motion to compel discovery. Dkt. 32 ("the Motion"). On March 6, 2017, Flores joined in Moreno's motion and filed a separate memorandum in support of the motion. Dkt. 34. On March 13, 2017, the Government

filed a consolidated opposition.  Dkt. 37 ("Opp'n").  On March 16, 2017, Moreno filed a reply.  Dkt. 40.  On April 5, 2017, Flores filed a reply under seal.  Dkt. 50.  On April 7, 2017, the Government filed a sur reply to Flores's reply.  Dkt. 53.  On April 10, 2017, the Court distributed a tentative ruling and held oral argument regarding the parties' continuing discovery disputes.  Dkt. 54.  Many of the parties' arguments relate to the pending motion to suppress evidence seized during a traffic stop of defendants' vehicle by Los Angeles Sheriff's Department ("LASD") Deputy James Peterson.  In light of the Court's tentative ruling, the Government has submitted documents for the Court's in camera review relating to (1) other traffic stops by Peterson and (2) the dismissal of two past cases wherein Peterson was a witness.  The Court has since reviewed the documents submitted by the Government.  In light of the continuing disclosures by the Government, the Court ordered the parties to submit a joint report regarding remaining discovery disputes no later than April 24, 2017.  Id.  On April 24, 2017, the parties filed a joint status report regarding discovery disputes.  Dkt. 60.

On May 8, 2017, the Court held further oral argument regarding remaining discovery issues in this case.  Having carefully considered the parties' arguments the Court finds and concludes as follows.

## II.     BACKGROUND

On October 11, 2016, LASD Deputy Peterson stopped a Toyota 4 Runner ("the vehicle") on Interstate-5.  Flores was driving the vehicle.  Moreno was a passenger.  Peterson approached the vehicle, spoke with the occupants, and ultimately asked both defendants to exit the vehicle.  Peterson claims to have smelled marijuana in the vehicle.  Defendants refused to consent to a search of the vehicle.  Peterson placed both defendants in his patrol car while waiting for a canine-unit to arrive.  Thereafter, Jeffrey Hoslet arrived at the scene with a narcotics detection dog.  The narcotics dog handled by Hoslet allegedly alerted to the presence of narcotics in the vehicle.  LASD deputies searched the vehicle and found just over 4 kg of methamphetamine in a backpack and a .40 caliber handgun in the center console.

## III.    DISCUSSION

Defendants' respective motions to compel discovery seek production of several different categories of evidence.

### A.     Defendants' Statements and Scientific Tests

Defendants request production of evidence relating to their own statements and any scientific tests and reports created in relation to this case. The Government avers that all such discovery has already been provided to the defense. Opp'n at 9-10. In his reply, Moreno indicates that he will accept the Government's representations in this respect. Dkt. 40 at 7-8. Flores's reply appears to be silent with respect to defendants' statements and scientific tests. Furthermore, the parties' joint status report makes no mention of any remaining discovery dispute regarding defendants' statements or scientific tests. In light of the foregoing, defendants' motions are **DENIED** with respect to production of defendants' statements as well as scientific tests and reports.

### B.     Henthorn Material Relating to Peterson

The duty to inspect personnel records in the Government's possession rests with the Government. United States v. Henthorn, 931 F.2d 29, 31 (9th Cir. 1991). The Government also has a duty to learn of exculpatory evidence known to others acting on the Government's behalf, "including the police." United States v. Price, 566 F.3d 900, 903 (9th Cir. 2009).

> In response to a request for exculpatory evidence, the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality. If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an in camera inspection and evaluation.

United States v. Gardner, 611 F.2d 770, 774–75 (9th Cir. 1980) (citations omitted). Only where the Government fails in its obligation to inspect personnel records may the Court intervene to conduct its own, in camera, review of the appropriate records and determine whether the Government is or was obligated to produce particular information. Henthorn, 931 F.2d at 31.

Defendants contend that they are entitled to additional Henthorn materials. Defendants contend:

    (1) that the Government has not adequately reviewed Hoslet and Peterson's LASD personnel files and disclosed Henthorn materials therein;

 (2) that defendants are entitled to additional records regarding disciplinary actions against Peterson in 1998 and 2002;

 (3) that defendants should be provided information relating to other traffic stops by Peterson; and

 (4) that defendants' should be given any documents prepared by the U.S. Attorney's Office regarding Peterson's credibility, the dismissal of other cases wherein Peterson was the arresting deputy, and any official decisions to refer Peterson for investigation by LASD or the District Attorney.

Dkt. 60.  The Court will address each issue in-turn.

### 1.     LASD Personnel Files

As a result of subpoenas issued to LASD for Hoslet and Peterson's personnel records, the Court has reviewed each deputies' records in camera.  That in camera review resulted in the disclosure of additional Henthorn material relating to Peterson and Hoslet.  In light of the Court's in camera review of the personnel records at issue and the Government's representation that it has produced all Henthorn materials in its possession, defendants' motion to compel further discovery from the deputies' files is **DENIED**.

### 2.     The 1998 and 2002 Discipline Against Peterson

Defendants acknowledge having received a description of two prior disciplinary actions against Peterson derived from Peterson's personnel file.  The Court has reviewed Peterson's personnel records in camera and determined that the entire Internal Affairs Bureau file regarding Peterson's misconduct in 2002 should be disclosed to defendants.  The Court has already disclosed those records to the parties, subject to a protective order.  Accordingly, defendants' motions to compel further discovery of documents relating to the 2002 investigation are **DENIED as moot**.

With respect to discipline against Peterson for conduct in 1998, the Court has similarly reviewed Peterson's records and determined that all material facts have already been disclosed by the Government in its description of the 1998 discipline.  Accordingly, defendants' motions to compel discovery of records relating to the 1998 discipline are **DENIED**.

### 3. Past Traffic Stops by Peterson

Defendants further request:

c. Details regarding how many times Deputy Peterson has stopped vehicles on I-5 in the last three years and conducted similar searches. As to each of these, provide:
  (i) the date;
  (ii) the name of the occupants of the vehicles;
  (iii) the circumstances of the individual case;
  (iv) the race-ethnicity of the driver and possible passenger;
  (v) whether he administered Miranda warnings prior to questioning;
  (vi) whether he ever simply cited the driver without doing a search;
  (vii) whether he ever cited the driver without calling the canines for a search;
  (viii) whether there were any negative results for presence of drugs on the searches he requested and/or participated in;
  (ix) whether charges were filed in all cases wherein he seized drugs. If not, why not.

Motion at 4-5. Moreno avers that "it appears that the fact pattern of this case or similar facts have resulted in significant cases filed in this district. If the Government is aware of misconduct by the deputies who are stopping these defendants/vehicles such knowledge raises the specter of misconduct, such discovery should be produced [sic]." Id. at 15. Moreno argues that he "seeks the information to test the government's primary and almost sole substantive witness's credibility." Dkt. 40 at 9. Thus, Moreno appears to contend that the data at issue is Giglio material – subject to discovery because of the Government's constitutional duties to disclose evidence implicating the credibility of its witnesses. See Giglio v. United States, 133 S. Ct. 1050 (2013) (requiring disclosure of evidence that might impeach a witness's credibility).

During oral argument on April 10, 2017, the Court ordered the Government to produce, for in camera review, any records in its possession of traffic stops by Peterson along the I-5. The Court has reviewed the Government's submission of incident reports authored by Peterson in other traffic stops that resulted in a federal prosecution. During oral argument on May 8, 2017, defendants argued that there appeared to be a pattern to Peterson's traffic stops wherein he allegedly stops Hispanic men on I-5 for purportedly minor violations of the California Vehicle Code and subsequently seeks consent to search the drivers' vehicles.

Defendants are not entitled to Rule 16 discovery in support of a selective prosecution argument unless defendants make a threshold showing that Peterson did not stop similarly situated persons of different races. United States v. Armstrong, 517 U.S. 456, 463 (1996). Numerous courts have denied similar discovery requests on this basis. See United States v. Hare, 308 F. Supp. 2d 955, 965 (D. Neb. 2004) (defendants were not entitled to discovery of prior stops unless they could offer "credible evidence" of selective prosecution); United States v. Taylor, No. 97-10125-01, 1998 WL 227161, at *7 (D. Kan. Apr. 18, 1998) (ruling that evidence of past, pretextual stops or an officer's inappropriate motive for the stop is irrelevant and therefore not discoverable).

Defendants have not made a threshold showing of selective prosecution such that they might be entitled to discovery of all of Peterson's prior incident reports along the I-5. However, not all traffic stop records in the Government's possession are beyond the ambit of Rule 16 and Giglio. The test for discovery under Rule 16 is "whether the discovery *may assist*" defendants in formulating a defense, not whether the documents disclosed are admissible. United States v. Soto–Zuniga, 837 F.3d 992, 1003 (9th Cir. 2016) (emphasis added). "It has been said that it behooves the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case." Id. (vacating a conviction and reversing for the denial of *potentially* useful discovery relating to the government's investigation of a large drug smuggling operation which defendant argued might result in investigatory leads showing that he had been framed). Pursuant to Federal Rule of Evidence 404(b), evidence of a prior act may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b) permits proof of a witness's conduct through evidence of a modus operandi. United States v. Ramirez-Jiminez, 967 F.2d 1321, 1325 (9th Cir. 1992). Where prior traffic stops share distinct similarities with the traffic stop at issue, they are often admitted *against* criminal defendants if the Government can articulate a permissible reason for their admission. See Peyer v. Duncan, 8 F. App'x 791, 795 (9th Cir. 2001) (evidence that defendant, a California Highway Patrol officer, made similar traffic stops and engaged in similar conversations with the female drivers was admissible to show he took similar actions in relation to victim); United States v. Enriquez, 457 F. App'x 795, 799 (10th Cir. 2012) (evidence of prior traffic stop was admissible against defendant because law enforcement's prior search of defendant's vehicle showed defendants' knowledge of how to hide narcotics). Furthermore, when 404(b) evidence is *offered by* the defense, the rules of evidence "need not be as restrictive as when a prosecutor uses such evidence as a sword." United States v. Wright, 625 F.3d 583, 608 (9th Cir. 2010) (quoting United States v. Aboumoussallem, 726 F.2d 906, 911 (2d Cir.1984)).

One of Peterson's prior incident reports is material to the defense insofar as it *might* evidence a plan or modus operandi used by Peterson to justify roadside vehicle searches.  Specifically, the incident report prepared by Peterson after he conducted a traffic stop of Israel Eric Ayala and Yessica Avila shares many similarities with the traffic stop here: Peterson stated that he observed dangerous driving behavior, stopped the vehicle in the same region of the I-5, interviewed the occupants, claimed to smell marijuana, searched the vehicle, and did not uncover any marijuana or related paraphernalia.[1]  The foregoing incident report is material to the defense principally because Peterson's claim to have smelled marijuana did not result in the discovery of marijuana in the vehicle.  Additionally, as discussed infra, Peterson's partner during the Ayala Case traffic stop, Deputy Vann, may not have shared Peterson's perceptions of the Ayala defendants during the traffic stop.  Accordingly, the Court orders the Government to disclose the incident report from the Ayala Case traffic stop to defense counsel.[2]

With respect to the incident report in the Ayala Case, defendants' motion to compel discovery of records relating to Peterson's prior stops is **GRANTED**.  With respect to any other traffic stop records in the Government's possession, defendants' motions to compel further discovery are **DENIED**.

### 4.     Internal Documents Discussing Peterson's Credibility and the Dismissal of Other Cases Wherein Peterson Was a Witness

The parties continue to dispute defendants' entitlement to any documents prepared by Government attorneys about or relating to Peterson's credibility and role in other cases.  The Government has submitted all of the relevant records in its possession for in camera review.  Subpoenas have also issued for the same documents.  In a separate order, the Court has granted the Government's motions to quash those subpoenas.  As discussed in more detail in that separate order, the documents sought by defendants are work product and are not properly the subject of a motion to compel discovery.  See Morris v. Ylst, 447 F.3d 735, 742 (9th Cir. 2006); Fed. R. Crim. Proc. 16(a)(2) (Rule 16 does not

---

[1] This prior traffic stop subsequently resulted in charges against both vehicle occupants for possession of methamphetamine.  See United States v. Israel Eric Ayala and Yessica Avila, Case No. 15-cr-00085-SVW (the "Ayala Case").

[2] During the May 8, 2017 hearing, the Government indicated that it has already produced this report.  Out of an abundance of caution, the Government shall provide an additional copy to defense counsel.  If the Government contends that any further protective order is necessary in advance of disclosure, the Government shall draft a proposed order forthwith and submit it to the Court.

authorize "the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government"). Accordingly, with the exception of the one document discussed below, defendants' motions to compel discovery of the U.S. Attorney's internal memoranda are appropriately denied.

Courts distinguish between privileged work product and discovery of facts contained in internal documents.

> We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration.

Hickman v. Taylor, 329 U.S. 495, 511 (1947).

Based upon the Court's review of the Government's in camera submission, the Court has determined that certain facts discussed therein should be disclosed to the defense. Specifically, on June 8, 2015, Michael Azat sent an email to Kimberly Jaimez discussing Azat's investigation into the traffic stop in the Ayala Case (the "Azat Email"). Azat's email relayed facts from his interview with Peterson's partner during the Ayala traffic stop, Deputy Vann. Those facts may or may not provide investigatory leads to the defense or otherwise prove important. However, given their relation to the incident report, discussed above, and the possible discrepancies between Vann's perception of the Ayala traffic stop and Peterson's perception, the Court finds the facts contained in the Azat Email to be material to the defense and orders the Government to disclose the facts relayed therein.[3] With respect to the Azat Email, defendants' motions to compel production of internal documents relating to Peterson's credibility are **GRANTED in part**. In all other respects, defendants' motions to compel discovery of internal documents discussing Peterson's credibility and role in other cases are **DENIED**.

---

[3] During the May 8, 2017 hearing, the Government indicated that it has already disclosed the facts contained in the Azat email. Out of an abundance of caution, the Government is ordered to provide defense counsel with an additional copy thereof.

### C.    Canine Training and History

Defendants argue that the Government has not adequately produced records relating to the narcotics dog used to search their vehicle. Since the instant motions were filed, the Government has produced five types of records relating to the narcotics dog used during the search of defendants' vehicle:

(1) National Police Canine Association certifications and test records;
(2) National Police Canine Association standards;
(3) the handler's training logs;
(4) a copy of notes taken by LASD Detective Jeffrey P. Hoslet on October 11, 2016; and
(5) a statement of training and experience of Detective Jeffrey P. Hoslet.

Opp'n at 13; Dkt. 40 at 12 (confirming receipt by Moreno).

As an initial matter, Moreno has attached a copy of item number four, above, to his reply brief. Dkt. 40 at 19. It is copy of a single page of handwritten notes. The notes are illegible. It is unclear if the document is illegible because of Hoslet's handwriting or because it is a photocopy of a handwritten page. Insofar as defendants have brought motions to suppress the evidence discovered in the vehicle and contend that their vehicle was subject to an unconstitutional search, the canine handler's notes from the inspection appear to be material to the defense. In light of the foregoing, the Government shall produce a clearer copy or image of the document or, alternatively, permit physical inspection of the document by the defendants.

Defendants are entitled to discovery of information related to the narcotics dog if it may be exculpatory or relevant impeachment evidence. See Aguilar v. Woodford, 725 F.3d 970, 982 (9th Cir. 2013) (failure to disclose dog's record of erroneous scent identifications ran afoul of its Brady obligations). Rule 16 also required production of certain narcotics dogs records where they are material to a motion to suppress. See United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2003) (district court erred by not ordering production of dog's certification and training records). "Federal Rule of Criminal Procedure 16 compels the government to disclose the 'handler's log,' as well as 'training records and score sheets, certification records, and training standards and manuals' pertaining to the dog." United States v. Thomas, 726 F.3d 1086, 1096 (9th Cir. 2013) (quoting Cedano-Arellano, 332 F.3d at 570-71). "These disclosures are mandatory when the government seeks to rely on a dog alert as the evidentiary basis for its search." Id. (quotation marks omitted).

Defendants aver that the Government has not yet, as required by Cedano-Arellano, produced "handler's logs," only the narcotics dog's "training logs."[4]  Dkt. 40 at 14.  The production of a "handler's log" is mandatory under the circumstances presented here.  Thomas, 726 F.3d at 1096.  To the extent that the Government is in possession of, and has not produced, "handler's logs," as compared to the dogs' "training logs" it has already produced, defendants' motions are **GRANTED**.[5]

Defendants also request records of the narcotics dog's past field performance during prior stops and searches.  The Government opposes this request.  The Government relies upon Florida v. Harris, 133 S. Ct. 1050 (2013), for its argument that past field performance of the dog is misleading and irrelevant.  In Florida v. Harris, the defendant argued that the search of his vehicle was unconstitutional because the narcotics dog used could not establish probable cause for the search.  On appeal, the Florida Supreme Court determined that the State was required to put into evidence an exhaustive set of records potentially relating to a narcotics dog's reliability.  The United States Supreme Court reversed, concluding that the evidentiary showing required by the Florida Supreme Court was "inconsistent with the 'flexible, common-sense standard' of probable cause."  Id. at 1053 (quoting Illinois v. Gates, 462 U.S. 213, 239 (1983)).  The Court determined that evidence relating to the dog's past field performance would "in most cases" have "relatively limited import" to the probable cause analysis because there are myriad possible reasons for field errors.  Id. at 1056-57.  In contrast, in a training environment, a dog's performance can be evaluated without concern for such errors.  Id. at 1057.

> For that reason, evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert.  If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.

---

[4] Neither party describes exactly what a handler's log is, as compared to a training log.

[5] The parties' joint report states that the handler's log will be provided, but, as of April 24, 2017, had not yet been disclosed to the defendants.  During the May 8, 2017 hearing, defendants represented that they were still awaiting disclosure of the handler's log.  The Government is ordered to disclose the canine handler's log forthwith.

Id. However, the Court also recognized the importance of a defendant's opportunity to cross-examine the Government's evidence in relation to a dog's reliability or a handler's history, noting that past field performance "may sometimes be relevant." Id.

In Harris, the Court held that, "[i]n short, a probable-cause hearing focusing on a dog's alert should proceed much like any other. The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure." Id. at 1058. Harris, which was initially filed in Florida state court, did not purport to interpret the parties' discovery obligations under Federal Rule of Criminal Procedure 16. Although the Government is not required to offer all of its evidence during a hearing on a motion to suppress, that says little about the Government's discovery production obligations under Rule 16.

The Thomas court construed Harris as supporting production of "a full complement of dog-history discovery." 726 F.3d at 1098. However, the Thomas court did not address discovery of a narcotics dog's prior field performance information. In Thomas the discovery at issue was a redacted training and performance-evaluation record. The Thomas court concluded that the redactions in the dog's record violated the Government's discovery obligations. Id.

The Court can discern no case, nor do the parties cite any, in this circuit evaluating a defendant's entitlement to a dog's prior field performance information in light of Harris and Thomas. Courts elsewhere have come to differing conclusions about defendants' discovery rights in relation to a narcotics dog's past field performance. Compare United States v. Foreste, 780 F.3d 518, 527 (2d Cir. 2015) (district court abused its discretion by denying defendant's request for field performance records) with United States v. White, Case No. 2:13-cr-48-DBH, 2013 WL 5754948, at *2 (D. Me. Oct. 22, 2013) (denying a motion for discovery of field performance records, notwithstanding the Ninth Circuit's holding in Thomas).

Ultimately, the Court finds Foreste persuasive. "Harris did not hold that field performance records are irrelevant—only that they are not required" to demonstrate probable cause. Foreste, 780 F.3d at 528. Critically, Harris affirmed the principle that a defendant must be afforded an opportunity to challenge a narcotics dog's reliability. That principle "would be stripped of its value if the defendant were not entitled to discover the evidence on which he would base such a challenge." Foreste, 780 F.3d at 529.

The Government avers that "the deployment records of the canines for completely unrelated searches are misleading and irrelevant. However, if the Court is inclined to examine these records, the government can provide the canines' deployment records to

the Court for review." Opp'n at 15.  However, the reliability and value of the foregoing records is not appropriately decided by the Court at this time.  If defendants choose to use discoverable records to challenge the dog's reliability in a hearing on their motions to suppress evidence, then, at that time, the Court will be required to evaluate their relevance and the appropriate weight they should be given.  Defendants should be allowed access to the records so that they can evaluate for themselves whether they are persuasive impeachment evidence in relation to the narcotics dog and to permit further investigation by the defense, if appropriate.  For present purposes, Thomas and Rule 16 appear to require the production of the narcotics dog's field performance records.  Accordingly, with respect to the narcotics dog's prior field performance records, defendants' motions to compel discovery are **GRANTED**.

The parties' joint report does not clarify what other records are in the Government's possession and relate to the canine used in this case.  The Government represents that it "has, *or will*, comply" with the discovery requirements set forth in Harris and Cedano-Arellano.  Defendants aver that they have not received anything further from the Government since the April 10, 2017 hearing on the instant discovery motions.  In light of the foregoing, the Government is hereby ordered to produce all training records of the canines and handlers that are in the Government's possession.[6]

---

[6] In one passage of the parties' joint report, defendants request an answer to a specific question about the canine search conducted in this case, namely, "whether the officer's failure to walk the canine around the target vehicle prior to opening the door and permitting/directing the canine to enter the vehicle was in violation of the regulations of the Sheriff's Department and/or the training provided to him."  Dkt. 60 Ex. B at 9.  If Hoslet's use of the narcotics dog was inconsistent with LASD policy or his own training, then LASD's policies and records of Hoslet's training may be relevant to Hoslet's credibility and the reliability of the narcotics search conducted in this case.  The Government has a duty to learn potentially exculpatory information in the possession of those acting on its behalf.  Price, 566 F.3d at 903.

The Government appears to have already produced National Police Canine Association standards, Hoslet's training logs for the narcotics dog used in this case, and a statement describing Hoslet's training and experience.  However, none of the foregoing is responsive to defendants' specific request for material discovery regarding whether the narcotics dog search here complied with LASD policies and procedure as well as Hoslet's training.  Accordingly, the Government shall review any relevant LASD policies and procedures as well as Hoslet's training records and produce any records suggesting that Hoslet's conduct in this traffic stop was inconsistent with policy or his own training.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES – GENERAL        'O'

## D.  Recordings and Information Regarding Recording Devices

Defendants have repeatedly requested all recordings of the stop and information about the use of recording devices during the stop.  The Government avers that it has already produced all recordings from the recording devices within the relevant patrol cars and that Peterson did not have any recording device on his person.  Defendants respond that:

> the Government has failed to explain why the video recording of the stop has audio while the deputy is speaking to the defendants in the vehicle and when interrogating them, yet, shortly thereafter all sound ceased.  The only logic [sic] explanation is that there is another recording which has not yet been produced.

Dkt. 40 at 8.  Defendants have lodged a DVD with the relevant recordings for the Court to review.

The DVD lodged by defendants contains three videos, each appears to show a different angle from Peterson's patrol car – two cameras evidently faced forward towards defendants' vehicle and one faced the rear seat of the patrol car.  One minute and forty seconds into each video, as Peterson can be observed walking along the passenger side of the patrol car and approaching defendants' vehicle, the audio suddenly changes from what sounds like noise inside the patrol car to what sounds like noise being picked up by a microphone on Peterson's body.  One can hear Peterson's initial questioning of the defendants inside their vehicle.  At or around nine minutes into the recordings, after defendants were placed in the rear of the partrolcar, the sound becomes faint.  The recordings sound as though they are no longer receiving audio from any microphone outside the vehicle.  Later in the recordings, Peterson and another LASD deputy can be observed speaking outside the vehicle, but the recording device does not appear to have picked up or recorded the audio of their conversation.

Defendants argue "[c]learly, there was some recording that Deputy Peterson had on his person but which he turned off at some point and that recording has not been produced."  Dkt. 40 at 7.  On the contrary, although the recordings suggest that Peterson had a microphone on his body and that audio heard by the microphone was transmitted and recorded by a device, the recordings do not demonstrate that a device on Peterson's body separately recorded all of the audio throughout the duration of the stop and investigation of the vehicle.  The Government is required to produce any recordings in its possession.  However, the Government claims that it has already provided all recordings in its possession.  The Court accepts the Government's representation.  Accordingly, with

respect to further recordings from the stop and investigation of the vehicle, defendants' motions are **DENIED without prejudice**.

Defendants further insist that, if Peterson lacked a recording device, they are entitled to an explanation *why* Peterson did not have a recording device. The Government avers that LASD does not require recording devices. Defendants respond that the Los Angeles County Office of the Inspector General recently "strongly recommended" that deputies use body-cameras. Dkt. 40 at 11. Defendants do not explain which records relating to the use of cameras, other than the purportedly undisclosed recordings, are in the Government's possession to which they are entitled. Accordingly, to the extent the defendants seek further discovery related to the reasons why Peterson lacked a recording device, defendants' motions are **DENIED**.

### E.    Data on the Government's Charging Behavior

Defendants request:

Details regarding how many cases in the last three years have been charged by the United States Attorney's Office which have a similar fact pattern to this case, specifically, a stop and search on I-5 for an alleged traffic violation which resulted in the discovery of drugs.

Motion 4-5. The Government's recent charging decisions and behavior have nothing to do with Peterson's credibility or defendants' guilt or innocence. Furthermore, the Government's charging strategies and decisions are protected work product that are not properly subject to discovery by defense counsel. See Morris v. Ylst, 447 F.3d 735, 742 (9th Cir. 2006); Fed. R. Crim. Proc. 16(a)(2). Accordingly, defendants' motions are **DENIED** with respect to request the requested data on charging decisions by the Government.

### F.    Confidential Informant Information

Defendants also request any information relating to informants, confidential sources, or anonymous tips that may have caused the vehicle stop at issue in this case. The Government has represented and maintains that "[t]he stop of the vehicle was not the result of a confidential information nor was it the result of any type of tip provided to law enforcement." Motion Ex. C at 1. Accordingly, there does not appear to be information responsive to defendants' request. Moreno argues that the Government's responses have been evasive:

when Mr. Moreno inquired whether the stop was a result of confidential information provided by a third party, the Government responded vaguely in a letter dated January 20, 2017, by stating, "No Confidential Information was used in the traffic stop conducted on October 11, 2016."  Although the defense requested clarification, the Government waited one month later to clarify. In a letter dated February 24, 2017, the Government stated, "The stop of the vehicle was not the result of a confidential informant nor was it the result of any type of tip provided to law enforcement".

Dkt. 40 at 6.  The foregoing does not demonstrate that the Government has failed to comply with its discovery obligations.  The Court accepts the Government's representation that there is no information in its possession that would be responsive to defendants' request.  With respect to confidential informant information, defendants' motions are **DENIED**.

### G.    Other Categories and Requests

The Court has attempted here to address the discovery requests presented by defendants using the categories adopted by the parties in their briefing.  To the extent that defendants have sought to compel additional discovery that is not addressed here, defendants have not made the requisite showing of materiality by addressing the Court to particular evidence and the reason its production should be compelled.[7]  Accordingly, except as otherwise noted above, any remaining discovery requests listed in defendants' motions are **DENIED without prejudice**.

---

[7] In sub-section L of Exhibit A and Exhibit B to the parties' joint report, defendants state that bates page 6 of their discovery is inappropriately redacted.  Defendants seek an unredacted copy or a statement from the Government providing the basis for the redaction.  The Government does not appear to have responded in the joint report.  Defendants' have not provided bates page 6 to the Court to review, nor were any purportedly inappropriate redactions raised in defendants' motions to compel discovery.  The parties' joint report appears to be the first time any party has raised an issue relating to redaction.  Defendants' brief mention of this issue in the joint report does not provide a basis for compelling further discovery from the Government, accordingly the request is **DENIED without prejudice**.

## IV. CONCLUSION

Defendants' motions to compel discovery are **GRANTED in part** and **DENIED in part** in accordance with the foregoing order.

IT IS SO ORDERED.

| | 00 | 00 |
|---|---|---|
| Initials of Deputy Clerk | | CMJ |